UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY CHRISTINE WHITTAKER,                    **Case 07-Civ-7342 (VM)**

      Plaintiff,

                             **MEMORANDUM of LAW IN**
                             **SUPPORT OF MOTION FOR**
      v.                     **ENTRY OF DEFAULT**
                             **JUDGMENT**

THE ART STUDENTS LEAGUE,

      Defendant.

The Plaintiff in this action, pursuant to Federal Rule of Civil Procedure 55(b) (2) respectfully moves

the Court for entry of default judgment against the defendant.  In support thereof, the plaintiff states:

1. This action was commenced on August 16, 2007.

2. The defendant was properly served with a summon and complaint on August 20, 2007.

3. A responsive pleading was due on or before September 10, 2007.

4. No answer or responsive pleading has been filed as noted in the Certificate dated
   August 11, 2007.

5. The clerk's certificate of default, a copy of the claim to which no response has been
   made, and a proposed form of default judgment is attached to this motion.


Under Rule 55 (b) (2),


If the party against whom judgment by default is sought has appeared in
the action, the party (or, if appearing by representative, the party's
representative) shall be served with written notice of the application for
judgment at least 3 days prior to the hearing on such application. If, in
order to enable the court to enter judgment or to carry it into effect, it is
necessary to take an account or to determine the amount of damages or
to establish the truth of any averment by evidence or to make an
investigation of any other matter, the court may conduct such hearings
or order such references as it deems necessary and proper and shall

accord a right of trial by jury to the parties when and as required by any statute of the United States.

WHEREFORE, the Plaintiff respectfully moves the Court for entry of default judgment against the defendant.

Dated: September 12, 2007.                    Respectfully submitted,

LOCKSLEY O. WADE, ESQ.
Law Office of Locksley O. Wade, LLC
15 West 39th Street, 3rd Floor
New York, NY 10018
(212) 220-3610 - Telephone
(212) 253-4142 - Facsimile
lwade@lwade-law.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the *Memorandum of Law In Support Of Motion for Entry of Default Judgment* was served on the defendant, Attn: Joseph Rossi, Deputy Director, The Art Students League, 215 West 57th Street New York, NY 10019, via regular U.S. Mail, on this 12th day of September 2007.

LOCKSLEY O. WADE, ESQ.
*Attorney for Plaintiff*

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Mary Christine Whittaker

                                    Plaintiff,                  07-Civ-7342    ( VM   )

         - against -                                   **CLERK'S CERTIFICATE**

The Art Students League,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


        I, J. MICHAEL MCMAHON, Clerk of the United States District Court for

the Southern District of New York, do hereby certify that this action commenced on ___8/16/2007___

with the filing of a summons and complaint, a copy of the summons and complaint was served

on defendant by serving _The Art Sutdents League, 57th Street, New York, NY_____

 by delivering a copy of the Summons and Complaint on an employee of the defendant  , and proof of

such service thereof was filed on _8/29/2007_____.

        I further certify that the docket entries indicate that the defendant has not filed an

answer or otherwise moved with respect to the complaint herein. The default of the defendant is

hereby noted.


Dated:        ℳ⁀  , New York
        _____9/11/₋7_____

                                        **J. MICHAEL MCMAHON**
                                        Clerk of the Court

                                By: _____ℓ⁀_____

                                        Deputy Clerk

07 CIV 734

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MARY CHRISTINE WHITTAKER,

Plaintiff,

v.

THE ART STUDENTS LEAGUE,

Defendant.

**COMPLAINT**

TRIAL BY JURY

ECF Case

RECEIVED
AUG 16 2007
U.S.D.C. S.D.
CASHIERS

### NATURE OF THE ACTION AND THE PARTIES

1.      This is an action to redress unlawful employment practices, under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., the New York City Human Rights Law, ("NYCHRL").

2.      Plaintiff Mary Christine Whittaker("Ms. Whittaker" or "Plaintiff") is an adult citizen of the United States residing in the County of New York.

3.      Defendant The Art Students League ("ASL" is a corporation incorporated under the laws of the State of New York with corporate offices and its principal place of business in the County of New York.  The Art Students League of New York is an art school founded in 1875.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiff's claims pursuant to Title VII, 42 U.S.C.

1

§ 2000e-5(f) and 28 U.S.C. §§ 1331, 1343, 1367(a) and 2201.

6.    Venue is proper in this district pursuant to Title VII, 42 U.S.C. § 2000e-5(f) (3), 28 U.S.C. § 1391(b).

7.    On May 30, 2007,  EEOC issued a Notice Of Right To Sue, which Plaintiff received several days later.

8.    Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

9.    Plaintiff seeks an award of appropriate relief.

**FACTS**

10.    Ms. Whittaker, former employee of ASL, a defendant,  has an undergraduate and a graduate degree in fine arts. She was an Athena Fellow via Mark Di Suvero/Socrates Sculpture Park, the largest steel sculptor park in North America.  She has participated in the highest volume level and most professional environment in her profession.

10.    Because she was concerned about the safety of the institution's students and faculty, Ms. Whittaker brought her concerns to Joseph Rossi, Deputy Director, ("Rossi") both verbally and in writing.

11.    Ms. Whittaker's report disclosed that the: (1) the Oxygen/Acetylene tanks improperly secured; (2) there were leaks in the Acetylene tank line lines; improper markings on the Oxygen/Acetylene system; (3) loose Oxygen Acetylene torch sets and improperly assembled hat sets; (4) improper installation of an Oxygen/Argon tanks to a Tig welder; (5) improper storage of tanks in compressor room; and (6) pressure on students and employees to use damaged

2

and inoperable Welding Gloves.

12.    In addition, she also brought to his attention that her breathing was often hampered and minimized due to the amount of smoke and toxins that were generated in the facility after each use. She followed a routine of taking showers at ASL to minimize the amount of toxins in her hair on her body. Despite her attempts at detoxification, she would often experience black mucus and limited breathing with a metal taste in her mouth for days. A few students mentioned experiencing similar side effects.

### Sussman's Participation in Creating a Hostile Workplace

13.    The above concerns and safety recommendations were challenged by Sussman, not as a professional with a different opinion, but rather as a personal and physically intimidating attack that created a hostile working environment within the meaning of Title VII.

14.    For example, on February 22, 2006, Ms. Whittaker was confronted by Sussman where he demanded that she leave her leave her classroom unattended in order to fabricate a project for his students. When she declined, Sussman's temperament became visibly abrasive and his demeanor escalated to an uncomfortable level as he demanded in an extremely elevated voice for her to step out into the hallway. Once there, Sussman commenced with condescending comments and he appeared to be clearly out of control to the point where Ms. Whittaker was forced to take evasive measures to avoid any physical contact with Sussman. Ms. Whittaker requested that Sussman end the conversation and not to follow her back to her classroom. Sussman refused and he continued to espouse threatening language while making physically threatening gestures toward Ms. Whittaker.

15.    Finally, Ms. Whittaker was forced to retreat to a safe distance in order to avoid

3

Sussman's advances with a metal object as he directed in toward Ms. Whittaker's face. Ms. Whittaker would suggest that the sole reason for Sussman not striking her was due to his realization that there were student witnessing the confrontation.

16.     Two days later, on February 24, 2006, Ms. Whittaker received a telephone message from Joseph Rossi regarding his concern that the situation was escalating between her and Sussman. Ms. Whittaker was unsuccessful in her attempts to reach Rossi. Ms. Whittaker than made an attempt to reach Ira Goldberg, the ASL director ("Goldberg"). Although she did not speak to him, she did leave a very detailed description of the Sussman confrontation on his answering machine.

17.     Accordingly, Goldberg, now aware of the incident, paid a visit to Ms. Whitaker's classroom later that day to discuss "the culture of ASL." According to Goldberg, such a culture involved "people becoming very impassioned and sometimes things get out of control" with yelling and screaming and perhaps idle threats to ones physical safety. Goldberg then scheduled a group meeting for the 28th of February with Sussman, Rossi and Ms. Whittaker in which he would be the mediator. Later that day Goldberg cancelled the meeting without any explanation and it was never rescheduled. To make sure there was a written record of the incident and in accordance with the ASL policy, as stated in the employee handbook, Ms. Whittaker submitted a written report to Goldberg.

18.     For the next few months there were a genuine lack or respect for Ms. Whitaker's safely and well being as exhibited by the shouting and yelling from other ASL employees, including but not limited to, Steven Madden and Joseph Rossi. Throughout this period, Sussman continually glared while exhibiting a hostile intent whenever he saw Ms. Whittaker. Such

4

behavior would make any normal person extremely uncomfortable. Ms. Whittaker was extremely uncomfortable. In fact, she reports of one incident where Sussman lurked in the hall, well after his class ended, with no other purpose but to intimidate Ms. Whittaker. This is kind of atmosphere faced by Ms. Whittaker. It was cultivated, encouraged and supported by Goldberg and Rossi.

### *The Sexually Charged Working Environment*

19.     Other evidence of an unwelcomed sexually charged working environment occurred with a series of events that taking place between April and May of 2006. One day in particular, on or around May 1, 2006, Dana Parlier, an instructor and soon to be immediate supervisor, passed her in the hallway just before she was to enter the sculpture room. As she passed him, he stated "just lie back and enjoy the ride." Ms. Whittaker had no idea what he was talking so she asked to please explain. His response was that she would understand and she should just keep walking. On entering the room there again was a three-foot chalk drawing of a woman's vagina on the table top. Ms. Whittaker discussed this incident with other ASL administrative employees and longtime students only to discover that Parlier has a history of inappropriate sexual comments and behavior directed toward women employees and students.

20.     On May 12, 2006, Ms. Whittaker encountered another sexually charged working environment orchestrated by Parlier. On that day, Ms. Whittaker arrived for class and proceeded to the locker room. On entering the locker room she encountered Rufus Douglas, a janitor ("Douglas") and Dana Parlier, her direct supervisor ("Parlier") having a discussion. As Ms. Whittaker entered the room, the conversation abruptly changed to one of a sexual nature. Other than a perfunctory greeting, Ms. Whittaker did not engage Parlier or Douglas in an extended

5

conversation. It was at that point that Douglas inquired as to why she was not speaking. Ms. Whittaker offered no extend comment other than to suggest that she is not deliberately avoiding them; nonetheless, both men continued speaking about sexually explicit photographs of Parlier's girlfriend posted inside his locker.

21.    Parlier then asked Douglas to show Ms. Whittaker his wood block carving. The carving depicted a penis shaped in the form of a snake on top a body shaped in the form of a woman's vagina. The carving also depicted the body in bondage with a screw attaching it to a globe of the earth from the base of the body. There were a series of eyes surrounding the image. Parlier then asked Douglas to describe the image to Ms. Whittaker. Douglas responded, in an angry elevated voice while glaring at Ms. Whittaker that "men fuck women and women fuck up the world."

22.    Ms. Whittaker replied in a disappointing tone with a touch of sarcasm "impress me." Douglas immediately responded, again in an angry and elevated voice while glaring at Ms. Whittaker, "this will impress you" as he directed his hands down towards his penis. Ms. Whittaker was indeed disappointed with their trite misogynous expressions when they were fully aware that she is a lesbian. Ms. Whittaker simply departed from the locker room. From all appearances, Douglas was emboldened by management's support for his sexual hostility toward Ms. Whittaker

### Douglas' Participation in Creating a Hostile Workplace

23.    Ms. Whittaker's next encounter with Douglas occurred on May 19, 2006. For Ms. Whittaker, what began an uneventful day culminated in leaving an indelible impression that she will remember for the rest of her life. On her arrival to the ASL building, Ms. Whittaker engaged

in a casual conversation with another employee, Sadie Bettis, she did not notice Douglas approaching until he was approximately ten feet away before she attempted to exchange greetings.

24.    Douglas, however, was not in the mood to exchange greetings as he aggressively charged toward Ms. Whittaker as he yelled and scream incoherent depicted explicit unlawful sexual acts with a facial expression exhibiting rage and spewing saliva for forty-five minutes.  In fact, Douglass was no more that six to eight inches from Ms. Whittaker's face as he leaned in to her yelling a litany of sexually explicit and derogatory remarks and offensive remarks on Ms. Whittaker sexual orientation.

25.    Douglas continued scream at Ms. Whitaker in an attempt to induce fear by threatening her with physical harm. Douglas stated that he had a forth degree black belt and was "going to break her neck" and after he raping her several times." Six times Ms. Whittaker attempted to remove herself from what any person would view as dangerous and hostile individual, however, Douglas blocked her from escaping and forced her to her back was against a wall. Something or someone distracted  Douglas which gave Ms. Whittaker an opportunity to escape on her seventh attempt. Ms. Whittaker states that she was embarrassed that a fellow employee and at least one student were there to witness the attack.

### The Retaliatory Discharge for Complaining

26.    After summoning her courage, Ms. Whittaker proceeded to report the Douglass attack, in detail to Rossi and Parlier. Rossi, in a nonchalant manner, interrupted Ms. Whittaker and stated that this incident had something to do with "what happened last week" in the locker room between Ms. Whittaker, Douglas and Parlier, as described above, and placed the blame for

7

the attack on Ms. Whittaker. Rossi further stated that if the attack had happened fifteen minutes prior, Douglass would still be on duty and his employment would have been immediately terminated. Rossi further stated that because the attacked occurred more than forty-five minute prior while Douglas was off-duty, no one had the authority to disciple Douglas for an event that occurred while he was off-duty. When Ms. Whittaker again asked Rossi "what specific course of action was the ASL administration going to take against Douglass," he stated "I'm busy." In response, Ms. Whittaker made it clear that she would be left with no other choice but to report the incident to the police.

27.    On May 22, 2006, as a follow-up to her police report, Ms. Whittaker met with Liz Birch, a police assistant, at the 18th Police Precinct to pick up the complaint report and to obtain information on how to file for an Order of Protection. Unfortunately, Ms. Whittaker was not able to file for an Order of Protection because she was not able to get the report. The report was delayed because the intake officer was struck by a motor vehicle.

28.    Later that day, after reporting to work, Rossi intercepted her near her locker and requested her presence in the conference room. It was there that Rossi informed Ms. Whittaker that he and Goldberg have concluded that her employment is to be terminated because she was not a good match for ASL. Rossi further stated that the reason for terminating her employment was because she was aggressive and confrontational. Rossi refused to elaborate any further on management's decision to end her employment. On May 30, 2006, Ms. Whittaker received her copy of the Incident Information Slip that is given to a complainant.

8

## COUNT I
## TITLE VII DISCRIMINATION

29.    Ms. Whittaker repeats and realleges every allegation in paragraphs 1 through 28 of this Complaint with the same force and effect as though fully set forth herein.

30.    ASL employs more than 15 employees.

31.    At all relevant times, ASL was an "employer" within the meaning of Title VII.  42 U.S.C. § 2000e (b).

32.    At all relevant times, Ms. Whittaker was an "employee" within the meaning of Title VII.  42 U.S.C. § 2000e (f).

33.    ASL's conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of sex in violation of Title VII. 42 U.S.C. §§ 2000e, 2000e-2 (a).

34.    ASL's conduct, as alleged herein, was carried out with malice or reckless disregard for Ms. Whittaker's protected rights to be free from discrimination, harassment, and retaliation.

35.    As a result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Whittaker is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from ASL under Title VII.

36.    As a further result of ASL's unlawful conduct, Ms. Whittaker has suffered and

9

continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Ms. Whittaker is entitled to recover damages for such injuries from ASL  under Title VII.. Ms. Whittaker is entitled to recover lost wages in the form of back pay and front pay, all with interest. In addition, she is entitled to recover lost health benefits, pension and retirement earnings, punitive damages and attorneys' fees and costs.

## COUNT II
## TITLE VII RETALIATORY DISCHARGE

37.    Ms. Whittaker  repeats and realleges every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as though fully set forth herein.

38.    ASL's conduct, as alleged herein, constituted unlawful employment practices and unlawful retaliatory termination of Ms. Whittaker's employment in violation of Title VII, 42 U.S.C. § 2000e-3 (a), because she complained of workplace discrimination.

39.    ASL's conduct, as alleged herein, was carried out with malice or reckless disregard for Ms. Whittaker's protected rights to be free from discrimination, harassment, and retaliation.

40.  As a result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Whittaker is entitled to recover such

10

monetary and other damages, punitive damages, interest, and attorneys' fees and costs from ASL

under Title VII.

41.     As a further result of ASL's unlawful conduct, Ms. Whittaker has suffered and

continues to suffer, among other items, impairment and damage to her good name and reputation,

emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment

of life, and lasting embarrassment and humiliation. Ms. Whittaker is entitled to recover damages

for such injuries from ASL  under Title VII.

**COUNT III**
**NEW YORK STATE HUMAN RIGHTS LAW**
**DISCRIMINATION**

42.     Ms. Whittaker repeats and realleges every allegation in paragraphs 1 through 41 of

this Complaint with the same force and effect as though fully set forth herein.

43.     At all relevant times, ASL was an "employer" within the meaning of the

NYSHRL. N.Y. Exec. Law § 292 (5).

44.     At all relevant times, Ms. Whittaker was an "employee" within the meaning of the

NYSHRL, and a "person" within the meaning of the NYSHRL. N.Y. Exec. Law §§ 292(1),

292(6).

45.     ASL's conduct, as alleged herein, constituted unlawful discriminatory practices

and unlawful discrimination on the basis of sex in violation of the NYSHRL. N.Y. Exec. L. §§

296 (1) (g).

46.     As a result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues

to suffer injury, with resulting monetary and other damages, including without limitation lost

wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement

11

earnings, lost interest and attorneys' fees and costs. Ms. Whittaker is entitled to recover such monetary and other damages, from ASL under the NYSHRL.

47.    As a further result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Ms. Whittaker is entitled to recover damages for such injuries from ASL under the NYSHRL.

**COUNT IV**
**NEW YORK STATE HUMAN RIGHTS LAW**
**RETALIATORY DISCHARGE**

48.    Ms. Whittaker repeats and realleges every allegation in paragraphs 1 through 47 of this Complaint with the same force and effect as though fully set forth herein.

49.    ASL's conduct, as alleged herein, constituted unlawful employment practices and unlawful retaliatory termination of Ms. Whittaker's employment in violation of NYSHRL, N.Y. Exec. L. §§ 296(1) (e), because she complained of workplace discrimination.

50.    As a result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Whittaker is entitled to recover such monetary and other damages, from ASL under the NYSHRL.

51.    As a further result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment

12

of life, and lasting embarrassment and humiliation. Ms. Whittaker is entitled to recover damages

for such injuries from ASL under the NYSHRL.

## COUNT V
## NEW YORK CITY HUMAN RIGHTS LAW
### DISCRIMINATION

52.     Ms. Whittaker repeats and realleges every allegation in paragraphs 1 through 51 of

this Complaint with the same force and effect as though fully set forth herein.

53.     At all relevant times, ASL was an "employer" within the meaning of the

NYCHRL,  N.Y. C. Admin. Code § 8-102.

54.     At all relevant times, Ms. Whittaker was an "employee" within the meaning of the

NYCHRL, and a "person" within the meaning of the NYCHRL,  N.Y.C. Admin. Code § 8-102.

55.     ASL's conduct, as alleged herein, constituted unlawful discriminatory practices

and unlawful discrimination on the basis of sex in violation of the NYCHRL,  N.Y. C. Admin.

Code § 8-107.

56.     As a result of ASL's unlawful conduct, Ms. Whittaker has suffered and continues

to suffer injury, with resulting monetary and other damages, including without limitation lost

wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement

earnings, lost interest and attorneys' fees and costs. Ms. Whittaker is entitled to recover such

monetary and other damages, from ASL under the NYCHRL.

57.     As a further result of ASL's unlawful conduct, Ms. Whittaker has suffered and

continues to suffer, among other items, impairment and damage to his good name and reputation,

13

emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment

of life, and lasting embarrassment and humiliation. Ms. Whittaker is entitled to recover damages

for such injuries from ASL under the NYCHRL.

## COUNT FOUR
## NEW YORK CITY HUMAN RIGHTS LAW
## RETALIATOR DISCHARGE

58.    Ms. Whittaker repeats and realleges every allegation in paragraphs 1 through 57 of

this Complaint with the same force and effect as though fully set forth herein.

59.    ASL's conduct, as alleged herein, constituted unlawful employment practices and

unlawful retaliatory termination of Ms. Whittaker's employment in violation of NYCHRL,  N.Y.

C. Admin.  Code § 8-107 because she complained of workplace discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment as follows:

(A) On Count I, enter a judgment declaring the acts and practices of Defendant to be in

violation of Title VII.

(B) On Count I award Plaintiff as against Defendant  loss wages, including without

limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest

lost as a result of said Defendant's unlawful discrimination, unlawful harassment, in accordance

with Title VII.

14

(C) On Count I, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment, in accordance with Title VII.

(D) On Count I, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with Title VII.

(E) On Count II, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with Title VII.

(F) On Count II, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with Title VII.

(G) On Count III, enter a judgment declaring the acts and practices of Defendant to be in violation of NYSHRL.

(H) On Count III award Plaintiff as against Defendant loss wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of said Defendant's unlawful discrimination, unlawful harassment, in accordance with NYSHRL.

(I) On Count III, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment, in accordance with NYSHRL.

15

(J) On Count III, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with NYSHRL.

(K) On Count IV, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with NYSHRL.

(L) On Count IV, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with NYSHRL.

(M) On Count V, enter a judgment declaring the acts and practices of Defendant to be in violation of NYCHRL.

(N) On Count V award Plaintiff as against Defendant  loss wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of said Defendant's unlawful discrimination, unlawful harassment, in accordance with NYCHRL.

(O) On Count V award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination, unlawful harassment, in accordance with NYCHRL.

(P) On Count V, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with NYCHRL.

(Q) On Count VI, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional

16

distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with NYCHRL.

(R) On Count VI, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with NYCHRL.

(I) Grant Plaintiff such other and further relief as may be necessary and proper.

**JURY DEMAND**

Plaintiff demands a jury trial for all issues triable by jury.

Dated: New York, New York

August 16, 2007

By: _____

Locksley O. Wade, Esq.
Law Office of Locksley O. Wade, LLC
15 West 39th Street, 3rd Floor
New York, NY 10018
(212) 220-3610
(212) 253-4142 Fax
lwade@lwade-law.com
*Attorney for Plaintiff*

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY CHRISTINE WHITTAKER,

     Plaintiff,

**Case 07-Civ-7342  (VM)**

**DEFAULT JUDGMENT**

     v.

THE ART STUDENTS LEAGUE,

     Defendant.

This action having been commenced on August 16, 2007, by the filing of the Summons and
Complaint, and a copy of the Summons and Complaint having been personally served on the
defendant, American Express Company, on August 20, 2007, by service on *its agent, CT Corporation,
New York, NY*, and a proof of service having been filed on August 29, 2007, and the defendant not
having answered the Complaint, and the time for answering the Complaint having expired, it is

     ORDERED, ADJUDGED AND DECREED: That the plaintiff have judgment against the
defendant as to all claims and causes of action alleged in the Complaint.

Dated: New York, New York

_____

_____
U.S.D.J.

This document was entered on the docket
on _____.